CHARLES J. DeFAZIO, Jr., PLAINTIFF, v. THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, ETC., DEFENDANT.

Hudson County Court
Law Division

Decided September 18, 1950.

Mr. *Samuel J. Davidson,* attorney for plaintiff.

Mr. *Dominick R. Rinaldi,* attorney for defendant (Mr. *E. Norman Wilson,* of counsel).

DREWEN. J. C. C.   Plaintiff sues for salary claimed to be due him as assistant city attorney of the City of Hoboken for the period from May 23 to December 31, 1947.   Admittedly

his official status was not *de jure*. The sole question here is whether it was *de facto,* as he alleges, and hence within *R. S.* 40 :11–7, which provides that: "Any person who has or shall have held, *de facto,* any office or position in the public service of any county or municipality, and who has or shall have performed the duties thereof, shall be entitled to the emoluments and compensation appropriate to such office or position for the time in fact so held and may recover therefor in any court of competent jurisdiction, notwithstanding any refusal or failure of any other person or officer." The case is submitted for determination by the court without a jury, on an agreed state of facts.

As the result of a popular referendum held well before the inception of this controversy the City of Hoboken has since been continuously subject to the civil service law of the State. Included in that discipline is the office presently in question. (*Camden v. Civil Service Commission,* 129 *N. J. L.* 354 (*Sup.* 1943); affirmed, 130 *N. J. L.* 532 (*E. & A.* 1943)). By ordinance adopted by a former commission on June 1, 1943, there was created the office of assistant corporation attorney, the appointing power being vested in the Commissioner of Revenue and Finance, subject to the approval of the Board. At the time of the events, hereinafter set forth, which gave rise to this litigation, the office thus created was, and had continuously from the beginning, been held and executed *de jure* by one Pellet. Against the background of that situation there occurred the following acts and proceedings.

On May 23, 1947, the Board of Commissioners adopted a resolution purporting to confirm plaintiff's appointment by the Commissioner of Revenue and Finance to the office of "assistant city attorney," there being then no office of the kind in the city government save that held by Pellet, and none legally so designated. On June 3, 1947, the Board of Commissioners adopted a resolution, effective ten days later, purporting to create the office of assistant city attorney and vesting the appointment in the Commissioner of Revenue and

Finance. On June 4, 1947, the Board received a communication from the Commissioner of Revenue and Finance advising the appointment by him "this day" of plaintiff as assistant city attorney. On the same date the Board adopted a resolution purporting to "ratify, approve and concur in" that appointment. On June 14, 1947, there became effective a resolution of the Board repealing the prior ordinance of June 1, 1943, creating the office of assistant corporation attorney, "for reasons of economy as well as the resulting efficiency from a reorganization of the law officers of the city."

It is to be observed from the foregoing that plaintiff's appointment—whether it be thought of as occurring on May 23rd or on June 4th, these stipulated dates being in apparent conflict—was to a non-existent office; that the only office of the kind existing at the time was that created by the prior ordinance and then held *de jure* by Pellet; that the repealing ordinance, assuming its validity, did not become effective until after plaintiff's appointment had been made and ratified; and that from all the facts submitted the only apparent reason for, as well as the only effect of, what the Commissioners undertook to do was the changing of the title from "assistant corporation attorney" to "assistant city attorney," this being intended as a means of annulling the civil service law as it applied to Pellet's office and of supplanting his incumbency with that of plaintiff. "The appointment of one to an office or position having no legal being ordinarily gives no color or existence to the supposed office or position or color of authority to the appointee." (*Handlon v. Belleville*, 4 *N. J.* 99, at 109, February, 1950).

The elements of a true claim to *de facto* office are not described in any pat formula but are to be looked for in all the attendant circumstances, the basic consideration being always the convenience or necessity of the public or the prevention of prejudice to disinterested third persons. In *Erwin v. Jersey City*, 60 *N. J. L.* 141, at 144 (*E. & A.* 1897), Chancellor Magie said for the Court of Errors and Appeals: "It is admitted to be difficult, if not impossible, to express in a

single formula what constitutes a public officer *de facto*. The masterly and exhaustive review of the adjudged cases on the subject made by Chief Justice Butler in his opinion in *State v. Carroll*, 38 *Conn.* 449, plainly discloses the difficulty of an exact definition, including all circumstances in which the law, because of public convenience and necessity, treats one as a public officer, although not such, and calls him an officer *de facto*." There is no question in the present instance of public convenience or necessity.

One of the conditions of *de facto* status is acquiescence (*Flaucher v. Camden, infra*), but in this case plaintiff's claim to office was not only not acquiesced in but was immediately challenged in unmistakable terms. The challenge came in the form of a prompt interdict by the Civil Service Commission against payment of the salary to plaintiff, and not only was this interdict never withdrawn, it was formally affirmed. Under date of September 9, 1947, the Commission, on Pellet's appeal and after full hearing, made plenary order that the act of the Hoboken Board of Commissioners "in removing or dismissing from or discontinuing the services of Otmar J. Pellet as Assistant Corporation Attorney or Assistant City Attorney, effective on or about May 23, 1947, be and the same hereby is set aside and the said Board of Commissioners, the Director of the Department of Revenue and Finance and the City Attorney and any or all of them be and they are hereby directed to restore the said Otmar J. Pellet to the pay and title given or undertaken to be given to Charles J. DeFazio, Jr., effective as of the date of his (Pellet's) removal or discontinuance from such service." It follows that plaintiff was not in the "unobstructed possession of his office." (*Waite v. Santa Cruz*, 22 *Sup. Ct.* 327, 184 *U. S.* 302, 46 *L. Ed.* 552 (1902)).

Also essential to the present claim is the color or the appearance of validity in the means by which plaintiff's incumbency was achieved. (*Handlon v. Belleville, supra; Petrone v. Newark*, 19 *N. J. Misc.* 318 (*Sup. Ct.* 1941); *Erwin v. Jersey City*, 60 *N. J. L.* 141). Where, as here, the claimed

status was from the very outset judicially denounced (cases *infra*), as violative of the rights of an established concurrent *de jure* tenure, there is simply no basis for holding that there was semblance of validity in any way.

■ Since, therefore, the present controversy does not involve the interest of the public or of third persons; and since there was no acquiescence in plaintiff's exercise of the claimed office but rather a direct and judicially sustained opposition thereto; and since for the want of a vacant office such as that to which plaintiff was appointed there was no color of validity in the appointment, it clearly appears that plaintiff's case comes within none of the categories set forth in *Flaucher v. Camden*, 56 N. J. L. 244 (*Sup. Ct.* 1893).

It so happens that all the stipulated material facts before me have, in one aspect or another, been repeatedly the subject of judicial review. In my opinion it is only because of lack of the required technical identities between the cases thus decided and the case in hand that they cannot be said to constitute *res adjudicata*. As precedents, however, I regard their control as absolute. The aforementioned civil service ruling was reviewed on *certiorari* by the former Supreme Court (*Board of Commissioners of Hoboken v. Civil Service Commission and Pellet*, 137 N. J. L. 72 (*Sup. Ct.* 1948)). The ruling was affirmed, and from the Supreme Court's opinion it appears that the only ground urged by the prosecutor of the writ was that the ordinance of 1943 creating the office of assistant corporation attorney was *ultra vires*. This result in the Supreme Court was affirmed by the Court of Errors and Appeals (137 N. J. L. 728 (1948)), and that court, after reciting in its opinion every fact that bears on the instant decision, declares: "We think the Civil Service Commission was bound by the case of *City of Camden v. Civil Service Commission, et al.*, 129 N. J. L. 354; affirmed, 130 N. J. L. 532. We can find no evidence to show the repeal of the ordinance of 1943 [was] made in good faith. In fact, the purpose seems to have been solely to defeat the Civil Service Law and place in office a new incumbent."

■ In addition there is the case of *Pellet v. Commissioners of Hoboken,* 4 *N. J. Super.* 259 (*App. Div.* 1949). That was an appeal from a summary judgment rendered by the Superior Court in *mandamus* proceedings on Pellet's claim for salary. The Appellate Division affirmed that part of the judgment directing payment of the salary to Pellet but reversed the part restoring him to office, on the ground that the proper forum for such relief was the Civil Service Commission. All of these determinations, taken together, I deem to be prohibitive of any present result· save the dismissal of the complaint.

There is yet another reason, it appears to me, why plaintiff's cause must fail, a reason that inheres in what in my judgment is a compulsion of public policy. The situation· here presented is categorically unlike any that the pertinent decisions reveal. Genuine perplexity, honest misunderstandings that arise in the tasks of public administration from want of clarity in the existing state of the law, exigent demands of public service and the like, are one thing; the setting out upon a gratuitous, ulterior and specious course of nullifying the law by circumventing it, is quite another. What was done by the Hoboken Commissioners was done for no ascertainable legitimate reason. It was in the nature of a coup, an exploit, which, had it gone unthwarted, would have accomplished the law's frustration in the particular intended. What the Court of Errors and Appeals has said (*supra*) about the absence of evidence of good faith on the part of the City Commissioners is equally true of the record submitted in this case; and the allowance of the claim in suit would effectively remove what, in theory at least, should serve as a deterrent upon other ventures of the kind.

■ The stipulation of facts contains the following: "* * * the Board of Commissioners aforesaid was advised that the position of assistant corporation attorney held by Pellet would be legally and validly abolished (*i. e.,* by the repealing ordinance) and in the place and stead of Pellet, Assistant Corporation Attorney, they could create the position

of Assistant City Attorney and appoint thereto Charles F. DeFazio, Jr. No bad faith, dishonesty or fraud in procuring the appointment of Assistant City Attorney and the introduction of the ordinance in question is charged by the defendant on the part of plaintiff." For one thing, the stipulation does not tell by whom nor upon what responsibility the advice was given; nor does it tell that the Commissioners were not also given contrary advice. For all that appears, the advice they followed could have been given by or entirely at the instance of plaintiff himself. Nor does the stipulation so much as suggest any principle or ground upon which that advice could have been based. What the agreed state of facts does show, however, in the 14th paragraph, is that plaintiff participated in the conference on ways and means. But in any case we are not, in my judgment, concerned here with the *bona fides* of the plaintiff as a question of fact. No determination on that score could control the result one way or the other. At best, and presuming no improper motive, plaintiff would in the situation presented be left to a recovery against the Commissioners personally under *R. S.* 11:21–2. It is altogether conceivable that circumstances might be such as to result in the co-existence of a *de jure* and a *de facto* holding of the same office (*Devlin v. City of Trenton,* 126 *N. J. L.* 563 (*E. & A.* 1941)); but that cannot be so under the instant facts. What does concern us here is the responsibility imposed as matter of law. The Commissioners made use of their power and authority in an attempt to subvert a perfectly legal feature of the City's government. Their doing so was unlawful. That is the determinant in my opinion. In the light of public policy, whatever else is to be said of plaintiff's belief in the quality of his appointment, it was undeniably the implementation of the very scheme our highest court has already denounced. That appointment was from first to last the end in view; to it everything else was preliminary. And the status which thereby ensued to plaintiff is not shown by any subsequent event to have attained to higher quality than that of its origin. The scheme, short of

its full fruition, could not at this stage, as I have already indicated, be better aided than by a plaintiff's judgment against the City. It remains only to be noted under this head of public policy that nothing is made any better by the circumstance that the attempt to obviate the law was strictly within the Commissioners' sphere of office, where their sworn obligation was to support and enforce it.

One thing more. Since the municipality was subject to the provisions of the state civil service law (*R. S.* 11:19–2 and 3) its disbursing officer had no authority to pay plaintiff's salary without the Civil Service Commission's prior certificate of plaintiff's proper status (*R. S.* 11:16–1). From the date of the Commission's first refusal to certify, the disbursing officer has been continuously without authority to pay. The legal propriety of this has been repeatedly tested and repeatedly affirmed, all of which means that nothing has occurred since then to alter or reverse the condition. See also *R. S.* 11:21–2.

Let judgment of no cause for action be entered in favor of the defendant and against the plaintiff.